# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# AIKEN DIVISION

| | |
|---|---|
| Synovus Bank,               )  <br>                             )  <br>            Plaintiff,       )  <br>v.                           )  <br>                             )  <br>Douglas C. Huffer,           )  <br>                             )  <br>            Defendant.       )  <br>_____) | Civil Action No.: 1:19-cv-00120-JMC  <br><br>**ORDER AND OPINION** |

Plaintiff Synovus Bank filed this action seeking to obtain judgment against Defendant Douglas C. Huffer for defaulting on his obligations under a promissory note executed in favor of Plaintiff. (*See* ECF No. 1-1.)

This matter is before the court on the parties' cross Motions for Summary Judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. (*See* ECF Nos. 51, 53.) The parties oppose the Motions respectively. (*See* ECF Nos. 56, 57.) For the reasons set forth below, the court **GRANTS** Plaintiff's Motion for Summary Judgment (ECF No. 53) and **DENIES** Defendant's Motion for Summary Judgment (ECF No. 51).

## I.     RELEVANT BACKGROUND TO PENDING MOTIONS

On February 25, 2016, Plaintiff loaned $250,000.00 to Hufco Properties, LLC (the "February Loan"), a limited liability company owned by Defendant and his partner Hal Cohen. (*See* ECF No. 51-2 at 2.) Plaintiff secured the February Loan with personal guaranties from Cohen and Defendant and with Defendant's pledge of a security interest in Brokerage Account #3792 maintained by Georgia Bank & Trust[1] ("the Brokerage Account").[2] (*See* ECF No. 51-2 at 10–20.)

---

[1] Georgia Bank & Trust later merged into South State Bank.
[2] The Brokerage Account was established in the names of Defendant and his wife, Terry L. Huffer. (*See* ECF No. 51-2 at 3.)

At the time the Brokerage Account was pledged, Defendant executed a collateral receipt specifying the value of the Brokerage Account as $237,673.31.[3] (*See* ECF No. 51-2 at 9.)

On April 13, 2016, Plaintiff made a new loan to Hufco Properties, LLC (the "April Loan") in the aggregate amount of $420,000.00. (*See* ECF No. 51-5 at 2.) Plaintiff secured the April Loan with personal guaranties from Cohen and Defendant, Cohen's pledge of real property located in Columbia County, Georgia, and Defendant's pledge of the Brokerage Account. (*See id.* at 4, 10; *see also* ECF No. 53-12 at 8–27.) Defendant executed a collateral receipt providing that the value of the Brokerage Account was $237,673.31.[4] (*See* ECF No. 53-13.)

A year later, on April 13, 2017, Plaintiff renewed the April Loan in the aggregate amount of $420,000.00. (*See* ECF No. 51-6.) Plaintiff secured the renewed April Loan with personal guarantees, Cohen's real property, and Defendant's Brokerage Account.[5] (*See id.* at 3; *see also* ECF No. 53-14 at 5–9.) When the April Loan matured on August 31, 2017, Plaintiff converted it from a commercial loan to Hufco Properties, LLC into a personal loan to Cohen and Defendant in the amount of $384,000.00 (the "August Loan"). (*See* ECF No. 51-7.) Plaintiff secured the August

---

[3] After receiving the collateral receipt, Defendant asserts that Plaintiff should have obtained a control agreement from Georgia Bank & Trust. (*See* ECF Nos. 51-1 at 2, 51-4 at 4 (noting in Request No. 19 that "Plaintiff has been unable to locate the original control agreement" for the loan transaction entered with Hufco Properties, LLC on February 25, 2016).) Because Plaintiff did not obtain a control agreement, Defendant argues that Plaintiff failed to perfect the security interest in the Brokerage Account. (*See* ECF No. 51-1 at 2.)

[4] After receiving this second collateral receipt, Defendant asserts that Plaintiff again failed to obtain a control agreement from Georgia Bank & Trust. (*See* ECF Nos. 51-1 at 3, 51-4 at 4 (noting in Request No. 20 that "Plaintiff has been unable to locate the original control agreement" for the loan transaction entered with Hufco Properties, LLC on April 13, 2016).) Because Plaintiff did not obtain a control agreement, Defendant argues that Plaintiff failed to perfect the security interest in the Brokerage Account. (*See* ECF No. 51-1 at 3.)

[5] Defendant asserts that Plaintiff *yet again* failed to obtain a control agreement from Georgia Bank & Trust. (*See* ECF Nos. 51-1 at 3, 51-4 at 5 (noting in Request No. 21 that "Plaintiff has been unable to locate the original control agreement" for the loan transaction entered with Hufco Properties, LLC on April 13, 2017).) Because Plaintiff did not obtain a control agreement, Defendant argues that Plaintiff failed to perfect the security interest in the Brokerage Account. (*See* ECF No. 51-1 at 3.)

Loan using only the Brokerage Account. (*See id.* at 3.) The August Loan's documentation contained the following express provisions:

> The laws of the United States and, to the extent not inconsistent therewith, the laws of the state of Georgia will govern this agreement.
>
> [Defendant] agree[s] to pay all costs of collection, replevin or any other or similar type of cost if I am in default. In addition, if [Plaintiff] hire[s] an attorney to collect this note, [Defendant] also agree[s] to pay any fee, not to exceed 15 percent of the principal and interest then owed, [Plaintiff] incur[s] with such attorney plus court costs (except where prohibited by law).
>
> [Defendant] waive[s] any defenses I have based on suretyship or impairment of collateral.

(*Id.* at 4.)

> This Agreement is governed by the laws of the state in which Secured Party is located. In the event of a dispute, the exclusive forum, venue, and place of jurisdiction will be the state in which Secured Party is located, unless otherwise by law, . . . .
>
> Debtor waives all claims for damages caused by Secured Party's acts or emissions where Secured Party acts in good faith.

(*Id.* at 6.) In the collateral receipt, Defendant acknowledged that the value of the Brokerage Account was $263,495.42. (*Id.* at 7.)

After receiving the collateral receipt in connection with the August Loan, Plaintiff *for the first time* attempted to perfect its security interest in the Brokerage Account. (*See* ECF No. 53-19.) Plaintiff contacted South State Bank—successor to Georgia Bank & Trust—to discuss the process of officially assigning the Brokerage Account to Plaintiff. (*See* ECF No. 53-20.) South State Bank, however, refused to execute a control agreement "because of the warranties included in the" agreement. (ECF No. 51-8 at 2.)

On November 14, 2017, South State Bank exercised a right of setoff against the Brokerage

Account.[6]  (*See* ECF No. 51-9.)  On November 29, 2017, Plaintiff informed Defendant that the August "[L]oan [was] now in default" and that Plaintiff was "accelerating all amounts due under the [August] Loan, including the outstanding principal balance, accrued unpaid interest, and any other accrued unpaid charges."[7]  (ECF No. 51-11 at 2.)

On July 6, 2018, Plaintiff filed suit against Cohen in the Superior Court of Columbia County, Georgia for the full balance due under the August Loan.  (*See* ECF No. 53-36.)  On November 12, 2018, Plaintiff and Cohen reached a settlement of their dispute.  (*See* ECF No. 53-37.)  Cohen agreed to pay Plaintiff $180,000.00 and Plaintiff agreed to release Cohen from his obligation on the August Loan.  (*Id.* at 3.)

On January 14, 2019, Plaintiff initiated the present suit against Defendant for the remaining balance on the August Loan and for attorney's fees.  (*See* ECF No. 1 at 2 ¶ 5–4 ¶ 14.)  On March 14, 2019, Defendant filed his Answer and Counterclaim in which he denied liability and asserted a counterclaim of breach of contract based on Plaintiff's failure to perfect its security interest in the Brokerage Account.  (*See* ECF No. 6 at 1 ¶ 4–2 ¶ 13, 3 ¶ 17–4 ¶ 27.)  On July 14, 2020, both

---

[6] South State Bank warned Defendant that the bank intended to exercise its right of setoff on October 31, 2017, (*see* ECF No. 53-27), and again on November 3, 2017, (*see* ECF No. 53-29).
[7] Plaintiff cited the "insecurity clause of the Security Agreement" as justification for its actions. (ECF No. 51-11 at 2.) The clause provides:

> After Debtor defaults, and after Secured Party gives any legally required notice and opportunity to cure the default, Secured Party may at Secured Party's option do any one or more of the following: (1) make all or any of the Secured Debts immediately due and accrue interest at the highest past-maturity interest rate; (2) require Debtor to gather the Property and make it available to Secured Party in a reasonable fashion; (3) enter upon Debtor's premises and take possession of all or any part of Debtor's property for purposes of preserving the Property or its value and use and operate Debtor's property to protect Secured Party's interest, all without payment or compensation to Debtor; and (3) use any remedy allowed by state or federal law, provided in any agreement evidencing or pertaining to the Secured Debts.

(ECF No. 53-17 at 6.)

parties moved for summary judgment. (ECF Nos. 51, 53.) Thereafter, the court heard argument from the parties on their respective Motions at a hearing on December 8, 2020. (*See* ECF No. 67.) The court considers the merits of the parties' Motions below.

## II.     JURISDICTION[8]

The court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the parties are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. For jurisdictional purposes, Plaintiff alleges that it is a Georgia corporation with its principal place of business located in Columbus, Georgia. (*See* ECF No. 1 at 1 ¶ 1.) Plaintiff further alleges that Defendant is a resident of Aiken, South Carolina. (*Id.* ¶ 2; *see also* ECF No. 2 at 1 ¶ 2.) The court is satisfied that the amount in controversy exceeds $75,000.00, exclusive of interest and costs. (*See* ECF No. 1 at 1 ¶ 3; *see also id.* at 3 ¶ 11; ECF No. 1-2 at 2).

## III.     LEGAL STANDARD[9]

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect the disposition

---

[8] As specified herein, Plaintiff brings this action pursuant to the court's diversity jurisdiction. In a diversity suit, a federal district court must apply the rules of the forum state when addressing choice-of-law questions. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). South Carolina choice-of-law rules dictate that the court must apply the law specified in a contract. *See Bannister v. Shepherd*, 4 S.E.2d 7, 9 (S.C. 1939); *Livingston v. Atl. Coast Line R.R. Co.*, 180 S.E. 343, 345 (S.C. 1935). Under the provisions of the Universal Note and Security Agreement, Georgia law governs. (*See* ECF No. 51-7 at 4.) Moreover, the Commercial Security Agreement's provisions specify that the state of the secured party's location governs, which is also Georgia. (*See id.* at 6.) In their motion filings, the parties rely to a great degree on the substantive law of Georgia. Therefore, there does not appear to be any dispute that the court should apply Georgia substantive law.

[9] Because the court sits in diversity jurisdiction, it must apply federal procedural law. *See Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996).

5

of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). A genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict for the non-moving party. *See Newport News Holdings Corp. v. Virtual City Vision*, 650 F.3d 423, 434 (4th Cir. 2011).

In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir. 1990). The non-moving party may not oppose a motion for summary judgment with mere allegations or denials of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson*, 477 U.S. at 252; *Shealy v. Winston*, 929 F.2d 1009, 1012 (4th Cir. 1991). All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249. "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995).

## IV.     ANALYSIS

### A.     The Parties' Arguments

Plaintiff asserts that it is entitled to summary judgment on two claims resulting from the August Loan: "the first being to recover the remaining unsatisfied indebtedness, and the second for attorney's fees." (ECF No. 53-1 at 12.) As to its first claim, Plaintiff argues that under Georgia law, "it is well established that a plaintiff . . . establishes a prima facie case by producing the [promissory] note and showing that it was executed." (ECF No. 53-1 at 13 (quoting *Trendmark Homes, Inc. v. Bank of N. Ga.*, 726 S.E.2d 138, 139 (Ga. Ct. App. 2012) (internal quotations

6

omitted)).)   Therefore, because Defendant "admits he executed each of the relevant loan documents," "admits the promissory note is now in default," and "has produced no evidence that the indebtedness is not owed . . . [or] that a genuine issue of material fact exists," Plaintiff argues it is entitled to summary judgment.  (ECF No. 53-1 at 13 (citations omitted).)  As to its second claim, Plaintiff argues that "[b]ecause [Defendant] failed and refused to pay [the] principal and interest owed under the promissory note within ten days of being provided the required statutory notice through [Plaintiff's] Complaint, [Defendant] is liable under O.C.G.A.[10] § 13-1-11 for attorney's fees."  (ECF No. 53-1 at 14.)

Defendant disagrees with Plaintiff and responds that because it "fail[ed] to perfect its security interest," (ECF No. 51-1 at 6), he lost his collateral to a third party, (*see id.*).  Plaintiff's failure, therefore, "constitutes impairment of collateral."  (*Id.*)  "As such," Defendant argues, "summary judgment should be granted" in its favor regarding "the balance due on the August 31, 2017 promissory note."  (*Id.*)  As to his claim alleging that Plaintiff breached its contract, Defendant argues that "it is undisputed that the Brokerage Account was lost when South State Bank exercised its right of setoff and applied the entire balance in the account to loans that had been guaranteed by" Defendant.  (ECF No. 51-1 at 7.)  Because South State Bank "could not have exercised the right of setoff if [Plaintiff] had properly handled the Brokerage Account and perfected its security interest in the account," Defendant argues he "was deprived of the funds in excess of the amount he owed" and, therefore, "damaged by [Plaintiff's] breach of contract."  (*Id.*)  As a result, Defendant argues summary judgment as to his counterclaim is appropriate.  (*See id.*)

---

[10] The court observes that O.C.G.A. is an acronym for the Official Code of Georgia.  However, upon its review of The Bluebook, the court is persuaded that the more appropriate abbreviation for purposes of this Order is Ga. Code Ann.

7

**B.**     **The Court's Review**

*1.     Default on Promissory Note*

"In an action on a promissory note, a movant may establish a prima facie right to judgment as a matter of law [on the issue of liability] by producing the promissory note and showing that it was executed." *Ware v. Mutlibank 2009-1-RES-ADC Venture, LLC*, 758 S.E.2d 145, 150 (Ga. Ct. App. 2014); *Alexander v. Wachovia Bank, Nat'l Ass'n*, 700 S.E.2d 640, 642 (Ga. Ct. App. 2010) (citing *Vandegriff v. Hamilton*, 519 S.E.2d 702, 703 (Ga. Ct. App. 1999)). Once this prima facie case is established, "the burden then shifts to the obligor to establish an affirmative defense to the claim." *Han v. Han*, 670 S.E.2d 843, 844 (Ga. Ct. App. 2008). *See also Collins v. Regions Bank*, 639 S.E.2d 626, 627 (Ga. Ct. App. 2006) (citing *Stewart v. Johnson*, 605 S.E.2d 111, 113 (Ga. Ct. App. 2004)); *Bank of the Ozarks v. Knight*, C/A FILE NO. 4:13-CV-0008-HLM, 2013 WL 12123680, at *12 (N.D. Ga. Sept. 11, 2013) ("A plaintiff seeking to enforce a promissory note establishes a prima facie case by producing the note and showing that it was executed. Once that prima facie case has been made, the plaintiff is entitled to judgment as a matter of law unless the defendant can establish a defense." (internal quotation marks and citation omitted)).

Where the obligor is unable to establish an affirmative defense to the movant's claim, summary judgment for the lender is appropriate. *See, e.g.*, *Trendmark Homes, Inc.*, 726 S.E.2d at 140 (noting that where the obligor presents "no evidence that the agreement was altered, nor any evidence supporting the defenses of estoppel, waiver, or mutual departure," summary judgment for the lender is appropriate). To establish an affirmative defense, the defendant must "come forward with or point to specific facts in the record." *Big Sandy P'ship, LLC v. Branch Banking & Tr. Co.*, 723 S.E.2d 82, 84 (Ga. Ct. App. 2012) (citing *Se. Reducing Co. v. Wasserman*, 493 S.E.2d 201, 204 (Ga. Ct. App. 1997)).

Here, Plaintiff has produced the August 31, 2017 promissory note, (*see* ECF No. 53-17), and has demonstrated that it was executed, (*see* ECF No. 53-38 at 2 ¶ 1). Defendant admits that he "has not paid the balance due on the subject promissory note . . . between the maturity date of January 10, 2018 and the date of his responses to [Plaintiff's] Request for Admission." (*Id.* at 3 ¶ 6.) The burden, therefore, shifts to Defendant to establish an affirmative defense. *See Han*, 670 S.E.2d at 844. *See also Big Sandy P'ship, LLC*, 723 S.E.2d at 84 ("Where, as here, the record shows that the promissory notes and guarantees were duly executed by the Debtor[ ] and are in default, a prima facie right to judgment as a matter of law was established and the burden of production shift[s] to the Debtors to produce or point to evidence in the record which established an affirmative defense." (citations omitted)).

As his affirmative defense, Defendant argues that "the law regarding impairment of collateral is statutory, and the case law interpreting impairment of collateral recognizes that, if a lender fails to perfect its security interest and such failure results in the loss of the collateral to a third party, such failure constitutes impairment of collateral." (ECF No. 51-1 at 6 (citing Ga. Code Ann. § 11-3-605(e) (West 2021); S.C. Code Ann. § 36-3-605(d); *Bank South v. Jones*, 364 S.E.2d 281, 284 (Ga. Ct. App. 1987)).) Defendant further argues that an impairment of collateral is "a defense to payment of the debt, to the extent of the value of the collateral." (*Id.* at 5.) Therefore, because the value of the Brokerage Account at the time it was pledged as collateral to Plaintiff exceeds the amount "claimed to be owed by [Defendant] when this lawsuit was filed," Defendant argues that it should be discharged from liability. (*Id.* at 6.)

In response, Plaintiff argues that Defendant waived an impairment of collateral defense in the August Loan documentation (*see* ECF No. 58 at 3), and, even if the defense was not waived, he failed to satisfy the defense's prerequisites because a "bald claim of damage alone is

9

insufficient" (ECF No. 57 at 4) and "a discharge operates *only* when the holder 'unjustifiably impairs any collateral for the instrument,' *i.e.*, increases the risk to the party." (*Id.* at 3 (citing *Bank South*, 364 S.E.2d at 285 (quoting *Hunter v. Cmty. Loan, etc., Corp.*, 193 S.E.2d 55, 56 (Ga. Ct. App. 1972) (recognizing that the burden to show impairment of the collateral for the instruments rests with the defendant)))).) To this point, Plaintiff argues that because Defendant "has not presented any evidence that the Brokerage Account was injured or deteriorated in value due to [their] alleged failure to perfect its security interest in the collateral," there is no issue of fact as to the impairment of collateral defense. (ECF No. 57 at 4.)

Upon its review, the court observes that the clear and unambiguous language of the August Loan documentation establishes that Defendant waived the impairment of collateral defense. (*See* 5*1-7 at 4 ("I waive any defense I have based on . . . impairment of collateral.").) *See also Kwok v. Delta Air Lines, Inc.*, 994 F. Supp. 2d 1290, 1293 (N.D. Ga. 2014) ("Under Georgia law, when interpreting a contract the Court must first 'decide whether the language is clear and unambiguous.' If it is, then that concludes the matter." (quoting *CareAmerica, Inc. v. S. Care Corp.*, 494 S.E.2d 720 (Ga. Ct. App. 1997)). The court considered Defendant's argument that he only waived "any impairment of collateral defense that he had at the time that he signed the note on August 31, 2017," but does not find that argument persuasive based on the provision's use of the word "any." In support of this decision, the court managed to find one other district court decision that addressed the same waiver provision and that court also concluded that the impairment of collateral defense was waived. *See F.D.I.C. v. WS Sleeping Indian Rance, LLC*, Civil No. 2:12-cv-00818-DN, 2013 WL 5503183, at *2 (D. Utah Oct. 3, 2013) ("Defendants unequivocally waived affirmative defenses and potential claims, including the right to claim discharge based on impairment of collateral.").

Therefore, for the reasons discussed above, the court concludes that Defendant has failed to rebut Plaintiff's prima facie case of liability for the August Loan. Plaintiff therefore is entitled to summary judgment in its favor on the issue of Defendant's liability for the August Loan.

2.     *Attorney's Fees & Costs*

Plaintiff argues that it is "entitled to summary judgment on the issue of liability for attorney's fees and expenses." (ECF No. 53-1 at 14 (capitalizations removed).) In support of this argument, Plaintiff points to the August Loan documentation executed by the parties on August 31, 2017, which states that Defendant

> agree[s] to pay all costs of collection, replevin or any other or similar type of cost if I am in default. In addition, if [Plaintiff] hire[s] an attorney to collect this note, [Defendant] also agree[s] to pay any fee, not to exceed 15 percent of the principal and interest then owed, [Plaintiff] incur[s] with such attorney plus court costs (except where prohibited by law).

(ECF No. 53-17 at 4 (section titled "COLLECTION COSTS AND ATTORNEY'S FEES").) Plaintiff further asserts that it provided Defendant with the required notice of his default under the August Loan and informed him that he would *not* be liable for the payment of attorney's fees if the principal balance owed together with accrued interest was paid within ten days of Plaintiff filing the instant suit. (*See* ECF No. 1 at 3–4 ¶ 14 (informing Defendant that under Ga. Code Ann. § 13-1-11(a)(3), Defendant would not be liable for attorney fees if he "pa[id] the total amount of principal and accrued interest due on [the promissory] Note [ ] through the date of payment within ten (10) days of service of th[e] [Plaintiff's] Complaint").)

Section 13-1-11 of the Official Code of Georgia Annotated provides that "[o]bligations to pay attorney's fees upon any note or other evidence of indebtedness . . . shall be valid and enforceable and collectable as a part of such debt if such note . . . is collected by or through an attorney after maturity." Ga. Code Ann. § 13-1-11(a) (West 2021). "Lenders are required to notify

11

debtors in writing of their intent to collect attorney['s] fees unless the debt is paid off within ten days." *F.D.I.C. v. Broder*, C/A File Nos. 1:12-CV-2554-TWT, 1:12-CV-2569-TWT, 2014 WL 353577, at *4 (N.D. Ga. Jan. 31, 2014) (citing Ga. Code Ann. § 13-1-11(a)(3) ("If the maker, endorser, or party sought to be held on any such obligation shall pay the principal and interest in full before the expiration of such time [*i.e.*, ten days from the receipt of notice], then the obligation to pay the attorney's fees shall be void and no court shall enforce the agreement.")).

Upon its review, the court observes that Plaintiff's Complaint expressly notified Defendant of its intent to collect attorney's fees, unless the debt was paid off within ten days of his receipt of the Complaint. (*See* ECF No. 1 at 3–4 ¶ 14 ("Defendant is hereby notified that he may pay the total amount of principal and accrued interest due on [the promissory] Note . . . within ten (10) days of service of th[e] Complaint without incurring any liability for attorney['s] fees.").) Moreover, there is no evidence in the record that Defendant paid the principal and interest owed within the ten-day statutorily defined time period, despite Plaintiff providing Defendant with "an *opportunity* to avoid paying fees by timely curing the default." *But see Best v. CB Decatur Court, LLC*, 750 S.E.2d 716, 720 (Ga. Ct. App. 2013) (citing *Core LaVista, LLC v. Cumming*, 709 S.E.2d 336, 343 (Ga. Ct. App. 2011) (holding that neither the demand letters nor the complaint satisfied the notice requirement of Ga. Code Ann. § 13-1-11(a)(3) (West 2021) because neither informed the defendant that he had the opportunity to avoid paying attorney fees by timely curing the default)). Therefore, based on the foregoing, the court finds that Plaintiff is entitled to summary judgment on its claim for attorney's fees and expenses. *See, e.g.*, *Lockwood v. Fed. Deposit Ins. Corp.*, 767 S.E.2d 829, 832 (Ga. Ct. App. 2014) (noting that when a lender provides "notice [to the obligor] in [its] complaint [that] satisfies the dictates of O.C.G.A. § 13-1-11(a)(3)," an award of attorney's fees is warranted); *New House Prods., Inc. v. Commercial Plastics & Supply Corp.*,

233 S.E.2d 45, 47–48 (Ga. Ct. App. 1977) (holding that, when appellant denied receiving notice via a letter, the later-filed complaint provided sufficient notice to justify an award of attorney's fees and expenses).

### 3.  *Counterclaim - Breach of Contract*

Defendant asserts that he is entitled to summary judgment on his counterclaim for breach of contract because it is undisputed that Plaintiff breached the August Loan agreement by failing to perfect its security interest in the investment account. (*See, e.g.*, ECF No. 6 at 3 ¶ 23–4 ¶ 26.) Defendant further asserts that Plaintiff's failure to perfect its interest in the Brokerage Account is an unjustifiable impairment of collateral that entitles Defendant to avoid payment of the debt owed and also entitles him to damages resulting from the breach. (ECF No. 51-1 at 7.) As a result, Defendant argues that a jury should determine the amount of his damages because after South State Bank exercised the right to setoff, he not only lost the funds in the investment account but also suffered adverse tax consequences. (*Id.*)

Plaintiff opposes Defendant's Motion for Summary Judgment, asserting that not only did he waive his right to bring this claim (citing ECF No. 53-17 at 4), there is no evidence that Plaintiff's "alleged failure to have the Control Agreement executed by South State injured or impaired the Brokerage Account, allowed it to deteriorate in value, or that [Plaintiff] was negligent in failing to foreclose prior to a bankruptcy." (ECF No. 53-1 at 16, 19.) More specifically, Plaintiff argues that it "did not impair [Defendant's] collateral because [Defendant] had previously pledged his collateral to South State Bank without [Plaintiff's] knowledge," (*id.* at 15 (capitalizations removed)). "Even if [Defendant] could show that the Brokerage Account was injured or impaired," Plaintiff argues that "any failure to perfect [its interest] is [*actually*] the fault of" Defendant. (*Id.* at 16–17.) Finally, Plaintiff argues that "[e]ven if [Plaintiff] did impair [Defendant's] collateral,"

13

(ECF No. 53 at 17), Defendant "expressly waived any right to assert such claims and consented to [Plaintiff's] release of collateral," (*id.* (capitalizations removed)).

Upon its review, the court observes that the copies of the August Loan submitted by the parties were not easily legible. (*See, e.g.*, ECF Nos. 51-7, 53-17.) In this regard, the court observes that it is not clear what provisions of the August Loan documentation create duties or obligations on Plaintiff as the lender.[11] *Cf. Ashford v. Bank of Am., N.A.*, 2016 WL 11467723, at *7 (N.D. Ga. Aug. 31, 2016) ("A plaintiff must establish that a defendant breached a specific provision in the contract in order to establish a claim for breach of contract." (citation omitted)). As a result, the court finds that the August Loan documentation fails to establish that Plaintiff had a contractual obligation to perfect a security interest in the Brokerage Account that was breached by Plaintiff.[12] *See, e.g., Layer v. Clipper Petroleum, Inc.*, 735 S.E.2d 65, 69 (Ga. Ct. App. 2012) ("The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." (quoting *Canton Plaza*

---

[11] The perfection of security interest provisions in the August Loan documentation provided as follows:

> I authorize you to file a financing statement covering the Property. I will comply with, initiate[?], and otherwise assist you in connection with obtaining possession of or control over the Property for purposes of protecting your security interest under the Uniform Commercial Code.

(ECF No. 53-17 at 4.)

> Debtor authorizes Secured Party to file a financing statement covering the Property. Debtor will comply with, facilitate, and otherwise assist Secured Party in connection with obtaining possession or control over the Property for purposes of perfecting Secured Party's interest under the Uniform Commercial Code.

(*Id.* at 6.)

[12] The court observes that even if the August Loan documentation supports a claim for breach of contract, Defendant may have waived any damages resulting from such breach. (*See* ECF No. 53-17 at 6 ("Debtor waives all claims for damages caused by Secured Party's acts or emissions where Secured Party acts in good faith.").)

14

*v. Regions Bank, Inc.*, 732 S.E.2d 449, 454 (Ga. Ct. App. 2012)). Accordingly, the court the finds that Plaintiff is entitled to summary judgment and Defendant is not entitled to summary judgment on his counterclaim for breach of contract.

## V.     CONCLUSION

Upon careful consideration of the entire record, the court hereby **GRANTS** Plaintiff Synovus Bank's Motion for Summary Judgment (ECF No. 53) as to its claims for liability regarding the August Loan and attorney's fees and as to Defendant's counterclaim for breach of contract. The court **INSTRUCTS** Plaintiff to submit additional briefing by February 10, 2021, specifying the current amount of damages and attorney's fees it is claiming. Defendant shall have until February 17, 2021, to respond to Plaintiff's damages submission. In accordance with the foregoing, the court **DENIES** Defendant Douglas C. Huffer's Motion for Summary Judgment (ECF No. 51) in its entirety.

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

January 27, 2021
Columbia, South Carolina